UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: CRANE ENTERPRISES LLC,

Debtor,

CRANE, et al.,

Appellants,

-v-

CRANE ENTERPRISES LLC,

Appellee.

26cv3960 (DLC)

OPINION AND ORDER

APPEARANCES:

For appellants Michael E. Crane and Daniel M. Crane:
Mitchell Craig Shapiro
MCShapiro Law Group PC
Three Grace Avenue, Suite 100
Great Neck, NY 11021

For appellee Crane Enterprises LLC:
Brett S. Silverman
Silverman Law PLLC
4 Terry Terrace
Livingston, NJ 07039

DENISE COTE, District Judge:

On March 4, 2025, Crane Enterprises, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On April 16, 2026, the Bankruptcy Court approved the sale of the Debtor's sole asset, an apartment in Long Beach, New York, to a good-faith buyer. The Cranes failed

to obtain a stay of the April 16 Order and the sale was consummated on May 18. The Cranes' appeal from the Bankruptcy Court's April 16, 2026 Order is dismissed as equitably moot.

**Background**

The history of this litigation is described in two prior Opinions, with which familiarity is assumed. See In re Crane Enterprises, 25cv6793 (DLC), 2026 WL 924070 (S.D.N.Y. Apr. 6, 2026); In re Crane Enterprises, 25cv9795 (DLC), 25cv9809 (DLC), 2026 WL 1383368 (S.D.N.Y. May 18, 2026). This Opinion recites only those facts relevant to the instant motion.

The Debtor, Crane Enterprises LLC, is a New York limited liability company that, prior to the consummation of the sale at issue in this appeal, held a single asset: 99 shares in a two-bedroom cooperative apartment located in Long Beach, New York that has been valued at an amount less than $1 million (the "Apartment"), and a corresponding proprietary lease to possess the Apartment. The Debtor is owned in equal parts by the estates of sisters Rhoda Crane and Joyce Crane, which both have court-appointed administrators.

After the deaths of Rhoda Crane and Joyce Crane, the Debtor commenced an eviction action in New York state court to remove Michael Crane from the Apartment. Although Michael produced an alleged "lifetime lease" permitting him and his son Daniel to

reside in the Apartment indefinitely for $1 per year, the New York state court rejected this "lifetime lease" defense and entered a Judgment of Possession in the Debtor's favor and a Warrant of Eviction against Michael on November 18, 2024.

On March 4, 2025, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and, on March 5, the Debtor commenced an adversary proceeding in the Bankruptcy Court, seeking an order directing Michael and Daniel Crane to turn over possession of the Apartment to the Debtor under § 542 of the Bankruptcy Code. 11 U.S.C. § 542. On July 29, the Bankruptcy Court granted the Debtor summary judgment on the turnover claim, and, on July 30, issued an order directing Michael and Daniel to turn over possession of the Apartment. On August 20, the Bankruptcy Court denied reconsideration and a stay of its turnover order and, on August 22, the Bankruptcy Court granted the Debtor's motion to evict the Defendants from the Apartment.[1]

The Debtor's Chapter 11 case continued while the turnover and eviction proceedings were being adjudicated. On September 22, 2025, the Cranes filed a motion to dismiss the Chapter 11

[1] This Court recently affirmed these three orders of July 30, August 20, and August 22 on appeal. See In re Crane Enterprises, 25cv6793 (DLC), 2026 WL 924070 (S.D.N.Y. Apr. 6, 2026).

case. On November 17, the Bankruptcy Court denied the motion, finding that the Chapter 11 case was filed by administrators with the requisite authority in good faith, so no "cause" existed to justify dismissal.[2]

On December 4, 2025, the Bankruptcy Court entered an Order approving the Debtor's retention of a broker to market and sell the Apartment (the "Broker"). The Broker began marketing the Apartment, connected with the eventual buyer (the "Purchaser"), and engaged in negotiations with the Purchaser on the Debtor's behalf.

On February 4, 2026, the Debtor moved for the entry of an Order establishing procedures for the sale of the Apartment. The Cranes did not file any objection to this motion. After holding a February 26, 2026 hearing, the Bankruptcy Court entered an Order of March 4 granting the motion in large part. The March 4 Order, which the Cranes did not appeal, authorized the Debtor to sell the Apartment to the Purchaser "or to the highest and or best offer received at an auction of the Property," scheduled that auction for March 26, and set an auction bid deadline of March 23. No bids or requests for a bid

[2] This Court recently dismissed the Cranes' appeal of the Bankruptcy Court's denial of their motion to dismiss as a non-appealable interlocutory order. See In re Crane Enterprises, 25cv9795 (DLC), 25cv9809 (DLC), 2026 WL 1383368 (S.D.N.Y. May 18, 2026).

package were submitted as of the March 23 deadline or as of the afternoon of March 25, the day before the scheduled auction. Accordingly, on March 25, the Debtor filed a notice of cancellation of the auction.

The same March 25 notice also included a "designation of [a] successful bid." It specified that because the Debtor did not receive any qualified bids on or before the auction bid deadline, in accordance with the procedures set out in the Bankruptcy Court's March 4 Order, "the Debtor has therefore designated [the contract entered into with the Purchaser] as the Successful Bid." It also noted that "the Debtor will seek approval of . . . the sale of the [Apartment] to the [Purchaser]" during a hearing before the Bankruptcy Court that was later adjourned to April 14, 2026 (the "Sale Hearing").

On April 7, the Cranes filed an opposition to the Debtor's application for the Bankruptcy Court to approve the sale of the Apartment to the Purchaser. The Cranes cited the then-pending and now-denied appeals before this Court, as well as an allegedly pending appeal in New York state court of the November 18, 2024 Order evicting Michael Crane from the Apartment, and asked the Bankruptcy Court to "wait[] for the final results of the pending appeals" before deciding whether to approve the sale. The Cranes acknowledged that they did not timely object

to the Debtor's February 4 motion to approve the sale process, but raised concerns regarding "how the marketing [of the Apartment] was conducted, how many inquiries [the Debtor] received, [and] how many potential buyers were shown the Apartment or whether any potential buyers were informed of the deadline for qualified bids." They also speculated that "this entire process may have been rigged" given potential prior relationships between the Purchaser and the Broker or Debtor. The Cranes then requested that the Bankruptcy Court either (i) enter an Order cancelling the April 14 Sale Hearing and scheduling an evidentiary hearing regarding the Cranes' concerns, or (ii) deny the Debtor's request to approve the sale and vacate the Bankruptcy Court's March 4, 2026 Order approving the bid and sale procedures.

On April 11, the Debtor responded. The Debtor noted that the Cranes did not provide a memorandum of law, affidavits, or any other evidence to support their April 7 objection. The Debtor also attached declarations from the Broker and from the Vice President of the Debtor as to their marketing efforts.

On April 14, the Bankruptcy Court held the Sale Hearing.[3] At the conclusion of the hearing, the Bankruptcy Court approved

[3] A transcript of the April 14, 2026 Sale Hearing does not appear to be available in the record of appeal submitted on May 26, 2026, although it was separately mailed to the Court by the

the sale to the Purchaser, finding that the Debtor used sound business judgment in seeking to consummate the sale with the Purchaser and that the Purchaser was a "good faith" purchaser within the meaning of Bankruptcy Code § 363(m). The Bankruptcy Court then entered an Order on April 16 approving the sale and reiterating its findings of fact and conclusions of law from the April 14 hearing. Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, the April 16 Sale Order was automatically stayed for fourteen days, until April 30.

On April 29, one day before the automatic stay of the Sale Order expired, the Cranes filed a motion to the U.S. Court of Appeals for the Second Circuit seeking to stay the April 16 Sale Order. The next day, on April 30, the Second Circuit denied the motion without prejudice to renewal "because Appellants have not first moved for a stay in the district court, as required by Federal Rule of Appellate Procedure 8(a), and because Appellants have not submitted [a] memorandum of law in support of the motion."

Prior to filing their April 29 motion for a stay with the Second Circuit, the Cranes did not: (i) seek a stay pending appeal of the April 16 Sale Order from the Bankruptcy Court, as

---

Cranes. The following summary of the hearing is taken from the uncontested facts contained in the parties' briefing and the Bankruptcy Court's subsequent Order of April 16, 2026.

required by Rule 8007(a)(1) of the Federal Rules of Bankruptcy Procedure; (ii) seek a stay of the April 16 Sale Order from this Court after a direct appeal, as required by Rule 8007(b); or (iii) seek certification from the Bankruptcy Court for a direct appeal of its Order to the Court of Appeals, as required by Rule 8006. The Cranes also did not otherwise seek a stay of the April 16 Sale Order before the automatic stay expired on April 30.

On May 18, the sale of the Apartment was consummated. The Purchaser remitted the sale proceeds to the Debtor and received the Apartment's title. The Debtor then used the sale proceeds to satisfy an outstanding claim. Meanwhile, on May 13, the Cranes appealed the Bankruptcy Court's April 16, 2026 Sale Order to this Court. On May 20, the Debtor moved to dismiss the Cranes' May 13 appeal pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure. An Order of May 21 set briefing schedules for both the Cranes' May 13 appeal and the Debtor's May 20 motion to dismiss. The Cranes filed their appellants' opening brief and opposition to the motion to dismiss on June 1. The Debtor filed its appellee's brief and reply brief on the motion to dismiss on June 6. The Cranes filed their appellants' reply brief on June 8, at which point briefing on the appeal and the motion to dismiss were both fully submitted.

**Discussion**

The Cranes challenge the Bankruptcy Court's Order of April 16, 2026, in which the Bankruptcy Court approved the sale of the Apartment to the Buyer. Their appeal is dismissed as equitably moot.

Equitable mootness is "a prudential doctrine under which a district court may in its discretion dismiss a bankruptcy appeal when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." In re BGI, Inc., 772 F.3d 102, 107 (2d Cir. 2014) (citation omitted). "Unlike constitutional mootness," which goes to a court's subject matter jurisdiction, equitable mootness "is concerned with whether a particular remedy can be granted without unjustly upsetting a debtor's plan of reorganization." In re Charter Commc'ns, Inc., 691 F.3d 476, 481 (2d Cir. 2012). The doctrine therefore is a pragmatic one that "requires the district court to carefully balance the importance of finality in bankruptcy proceedings against the appellant's right to review and relief." Id.

"[A]n appeal is presumed equitably moot where the debtor's plan of reorganization has been substantially consummated." Id. at 482. Section 1101(2) of the Bankruptcy Code defines "substantial consummation" as:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

The Second Circuit has explained that "[t]he presumption of equitable mootness created by a plan's substantial consummation can be overcome by an objector, however, if the five factors set out in our decision in Frito Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944 (2d Cir. 1993), are satisfied." BGI, 772 F.3d at 108. These factors are:

> [1] the court can still order some effective relief;
>
> [2] such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;
>
> [3] such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;
>
> [4] the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and
>
> [5] the appellant pursued with diligence all available remedies to obtain a stay of

> execution of the objectionable order[,] if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

Id. (quoting Chateaugay, 10 F.3d at 952-53). "Although we require satisfaction of each [Chateaugay] factor to overcome a mootness presumption, we have placed significant reliance on the fifth factor, concluding that a chief consideration under [Chateaugay] is whether the appellant sought a stay of confirmation." Matter of MPM Silicones, LLC, 874 F.3d 787, 804 (2d Cir. 2017) (citation omitted). This is because "[i]t is generally considered inappropriately harsh to deny relief to which one is entitled on the purportedly equitable ground that the unfair (or illegal) plan has been put into effect . . . where a creditor took all appropriate steps to secure judicial relief." Id. at 805.

Here, the Cranes do not contest that the sale of the Apartment has been substantially consummated. As such, the only remaining question is whether the Cranes have successfully rebutted the presumption of equitable mootness by satisfying the five Chateaugay factors.

The Cranes fail to satisfy the Chateaugay factors. Most significantly, the Cranes did not pursue with diligence "all available remedies to obtain a stay" of the April 16 Order, and their failure to do so "creates a situation rendering it

inequitable to reverse" the sale. BGI, 772 F.3d at 108 (citation omitted). This factor alone, on which the Second Circuit has "placed significant reliance," is fatal to the Cranes' rebuttal of the presumption of equitable mootness. Matter of MPM Silicones, 874 F.3d at 804.

The Cranes argue that they sought to stay other orders. Such applications are irrelevant to this appeal. Here, the Cranes seek the vacatur of the April 16, 2026 Order approving the sale, and a reversal of the sale itself. Their failure to diligently seek a stay of that April 16 Order renders the request to vacate it now inequitable.[4]

Lastly, the Cranes argue that "equitable mootness is a narrow prudential doctrine developed to protect complex reorganizations . . . and multi-party restructuring." The Chateaugay factors apply with equal force, however, in ordinary bankruptcy proceedings. The interest in finality exists in matters large and small. Thus, this Court exercises its discretion to dismiss the Cranes' appeal of the Bankruptcy Court's April 16, 2026 Order approving the sale.

[4] The Cranes also contend in their opposition that they "asked the Bankruptcy Court and the Second Circuit Court of Appeals to stay the closing of the Sale." There is no record evidence of such a request to the Bankruptcy Court, and the request to the Second Circuit was procedurally improper.

**Conclusion**

The Cranes' May 13, 2026 appeal is dismissed as moot. The Debtor's May 20, 2026 motion to dismiss the Cranes' appeal is granted.

Dated: New York, New York
June 12, 2026

DENISE COTE
United States District Judge